IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DAVID J. DICKMAN,

        Plaintiff,

vs.                            Case No. 11-2523-JTM

RAY LaHOOD,
Secretary of the Department of
Transportation,

        Defendant.


MEMORANDUM AND ORDER

Plaintiff David Dickman filed this action claiming unlawful employment discrimination. The complaint contains three counts, all based on the federal Rehabilitation Act. In the first count, plaintiff claims he was denied a position with the Federal Aviation Administration (FAA) on account of a disability. Second, he claims the FAA violated a duty to take affirmative action to hire him, a disabled person. And third, he claims the FAA retaliated against him for making a prior claim of disability discrimination.

The matter is now before the court on defendant's motion to dismiss and/or for summary judgment. The defendant Secretary of Transportation seeks dismissal of the first two claims under Fed.R.Civ.Pr.12(b)(6) for failure to state a claim on which relief can be granted.  On the third claim, defendant argues summary judgment is warranted because the undisputed facts show the FAA did

not retaliate against plaintiff. For the reasons set forth below, the court concludes defendant's motion to dismiss should be denied.

*Factual Background*

The following facts are largely taken from plaintiff's complaint. The court also takes judicial notice of certain facts in the public record relating to a prior lawsuit by plaintiff. For purposes of the motion to dismiss under Rule 12(b)(6), the court assumes the well-pleaded facts in the complaint to be true.

Plaintiff Dickman was formerly employed by the FAA as an Airway Transportation Systems Specialist in Harlingen, Texas, resigning from that position on December 16, 2004. Dickman suffers from brain and heart impairments that substantially impair his ability to sleep. ¶ 8. Plaintiff has been rated by the U.S. Department of Veterans Affairs as a 30-percent disabled veteran. *Id*.

Before the end of his employment in 2004, plaintiff applied for another position with the FAA, but was denied the position. He filed complaints with the FAA and Equal Employment Opportunity Commission claiming he was discriminated against in violation of the Rehabilitation Act. Those complaints formed the basis of a prior lawsuit, *Dickman v. Peters*, No. 07-2562-JAR (D. Kan.) ("*Dickman I*"). On May 15, 2009, the court in *Dickman I* granted summary judgment in favor of the FAA. The court found plaintiff's evidence of difficulty sleeping was not sufficient to show a disability. As a result the court dismissed all of the claims, including those for discrimination, failure to make reasonable accommodation, and failure to have an affirmative action program for hiring disabled persons. *See Dickman v. Peters*, No. 07-2562-JAR (D. Kan.) (Dkt. 48). The court also found plaintiff had failed to exhaust administrative remedies on the latter two claims.

Part of plaintiff's claim in *Dickman I* was that DeAngela Hightower, a Human Resources Specialist for the FAA in Kansas City, wrongfully declined to select plaintiff for the position at issue in that case. Hightower was deposed as part of *Dickman I*.

In 2008, while *Dickman I* was pending, plaintiff contacted Hightower about an open Management and Program Analyst position with the FAA. Ms. Hightower informed plaintiff an applicant generally must live within a 50-mile radius of the agency to be eligible for the position. Plaintiff lived in Willis, Kansas, more than 80 miles away. Plaintiff requested he be allowed to use his sister's address, which was only 20 miles away. Plaintiff said he could live at his sister's residence during the workweek and return to Willis on weekends. Plaintiff made the same request to Danny Sadler, who was the branch manager of human resources.

On September 9, 2008, plaintiff discovered Sadler had not placed him on the list of applicants for the position because plaintiff resided outside of the area. Plaintiff alleges he was among the best qualified candidates for the position. Plaintiff claims his "request for reasonable accommodation was thus denied."

Count I of the complaint alleges plaintiff was a qualified individual with a disability and his disability was a motivating factor in defendant's decision not to place his name on the list of applicants for the Management and Program Analyst position. Count II alleges defendant failed to take affirmative actions to employ plaintiff, a disabled individual, in violation of the Rehabilitation Act. Count III alleges Hightower and Sadler knew of his prior discrimination complaint and retaliated against him because of it by refusing to place his name on the list of applicants.

*Conclusions of Law*

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint.... Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511). The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and are undisputed. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court may also consider facts subject to judicial notice without converting the motion into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Defendant's motion to dismiss Counts I and II under Rule 12(b)(6) is not a model of clarity. The brief includes an extensive discussion of whether or not plaintiff actually has a disability and a lengthy statement of "undisputed material facts," although defendant elsewhere concedes both of these things are not relevant to the motion to dismiss on the pleadings. The confusion from these items spreads to the plaintiff's various responsive pleadings, which ask the court to postpone any summary judgment ruling, but which more or less fail to address the Rule 12(b)(6) issues. (Dkt. 14, 16, 20).

Counts I and II include the following allegations: Dickman has a disability that substantially impairs his ability to sleep; Hightower told plaintiff an applicant "generally" must live within 50 miles to be eligible for a position; Dickman lived in Willis, Kansas, more than 80 miles away, but asked to stay at closer residence during the work week; Dickman is otherwise qualified for the position he sought; defendant refused his requested accommodation; plaintiff's disability was a motivating factor in defendant's decision not to place his name on the list of applicants; and defendant failed to take affirmative actions to employ him, a disabled person.

Section 504 of the Rehabilitation Act [29 U.S.C. § 794] provides in part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination ... under any program or activity conducted by any Executive agency" of the United States. The Act generally adopts the standards of the Americans with Disabilities Act (ADA) for

5

employment discrimination claims. 29 U.S.C. § 794(d). The ADA, in turn, defines a qualified individual as one "who, with or without reasonable accommodations, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). EEOC regulations explain "qualified" means "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of the position." 29 C.F.R. § 1630.2(m).

"Qualification standards" are "the personal and professional attributes including, the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired." *Id*., § 1630.2(q). As the EEOC's Interpretive Guide to Title I of the ADA explains:

> The ADA prohibits discrimination on the basis of disability against a qualified individual. The determination of whether an individual with a disability is "qualified" should be made in two steps. The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. For example, the first step in determining whether an accountant who is paraplegic is qualified for a certified public accountant (CPA) position is to examine the individual's credentials to determine whether the individual is a licensed CPA. This is sometimes referred to in the Rehabilitation Act caselaw as determining whether the individual is "otherwise qualified" for the position. See Senate Report at 33; House Labor Report at 64–65. (See § 1630.9 Not Making Reasonable Accommodation).
>
> The second step is to determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation. The purpose of this second step is to ensure that individuals with disabilities who can perform the essential functions of the position held or desired are not denied

> employment opportunities because they are not able to perform
> marginal functions of the position. House Labor Report at 55.

A discrimination claim under the Rehabilitation Act can be based on various theories, including disparate treatment, disparate impact, or a failure to make reasonable accommodation. *See Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012).

Plaintiff's complaint is not entirely clear about the theories underlying his claim. Count I alleges he was a qualified individual with a disability and his disability "was a motivating factor in the decision by Ms. Hightower and Mr. Sadler not to place his name on the referral list of applicants...." Doc. 1, ¶20. This asserts a disparate treatment theory – i.e., defendant treated plaintiff differently than others and refused to place his name on the applicant list because of his disability. To ultimately prevail on such a claim, plaintiff will have to provide evidence showing it was his disability rather than a neutral application of the 50-mile rule which prompted defendant's decision. But assuming plaintiff's allegation is true, as the court must on a motion to dismiss on the pleadings, plaintiff has stated a claim for discrimination under the Rehabilitation Act. *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case; plaintiff can rely on direct evidence of discrimination and prevail without proving prima facie case).

The complaint also asserts a theory of failure to make reasonable accommodation. As defendant points out, the law on accommodation ordinarily requires proof of some connection between the accommodation requested and the plaintiff's disability. *See e.g.*, *Nazum v. Ozark Automotive Distributors, Inc.*, 432 F.3d 839, 848 (8th Cir. 2005) ("Where the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie.

7

... [T]here must be a causal connection between the major life activity that is limited and the accommodation sought."); *Tesh v. U.S. Postal Service*, 349 F.3d 1270, 1276 (10th Cir. 2003) (rejecting claim where requested accommodation was "unrelated to the knee disability that Appellant claims in this case.").

Under the ADA, discrimination includes "not making reasonable accommodations *to the known physical or mental limitations* of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). In other words, the Act does not mandate accommodation on matters having no relationship at all to a disability. *Cf. Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012) (the point of the reasonable accommodation mandate is to require changes in otherwise neutral policies *that prevent the disabled from obtaining the same opportunities* that those without disabilities enjoy).  Defendant contends plaintiff's request for an accommodation on the 50-mile rule has nothing to do with his disability.

But for purposes of the motion to dismiss the court finds the allegations are sufficient to put defendant on notice of the basis of the claim and to state a claim for relief that is plausible on its face. The issue on a 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz*, 534 U.S. at 511. Plaintiff has outlined the circumstances under which defendant rejected his application. He has also alleged he can perform, with or without accommodation, all the essential functions of the position. Contrary to defendant's suggestions, the purpose of the 50-mile rule and whether it is some sort of essential prerequisite not subject to reasonable accommodation are factual matters not apparent from the current record. The court concludes the plaintiff's allegations are sufficient to withstand a motion to dismiss on the pleadings. Whether plaintiff can produce the evidence necessary to support his

claim at the summary judgment stage is another question. At this stage, however, the motion to dismiss the claim will be denied.

The Rehabilitation Act also encompasses a disparate impact theory of discrimination. The ADA provides employers may not use qualification standards or selection criteria "that screen out or tend to screen out or otherwise deny a job ... to an individual with a disability or a class of individuals with disabilities" unless the employer shows the standard is job-related and consistent with business necessity, and performance cannot be accomplished by reasonable accommodation. 42 U.S.C. §§ 12112(b)(6), 12113(a). *See also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 568 (1999). This rule prevents employers from using unnecessary selection criteria that disproportionately impact individuals with a disability, even if the employer does not intentionally discriminate against such individuals. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 (2003). Plaintiff's complaint contains no allegations from which it may reasonably be inferred the FAA's 50-mile rule caused a significant disparate effect on individuals with disabilities. It thus fails to state any plausible theory of disparate impact discrimination. As noted above however, Count I states a claim for relief under other theories, and so defendant's motion to dismiss Count I will be denied.

Count II of the complaint is based on section 501(b) of the Rehabilitation Act, which requires federal agencies to have an affirmative action program for hiring individuals with disabilities. 29 U.S.C. § 791(b). Although this places an affirmative duty on federal agencies to meet the needs of disabled workers and broaden their employment opportunities, the standards applicable to a claim under this section are ordinarily the same as those outlined above on Count I. *See Woodman v. Runyon*, 132 F.3d 1330, 1338-39 (10th Cir. 1997); *Moore v. Walker*, 24 Fed.Appx. 924, 927, 2001

WL 1564035 (10th Cir. 2001). For the same reasons stated above on Count I, the court finds Count II of the complaint states a plausible claim for discrimination under the Rehabilitation Act.

Count III alleges a claim for unlawful retaliation. Under ADA standards incorporated in the Rehabilitation Act, it is unlawful to discriminate against an individual based on the person's opposition to any act or practice made unlawful by these acts. 29 U.S.C. § 791(g); 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected opposition to discrimination, (2) a reasonable employee [or here an applicant for employment] would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011). The facts and reasonable inferences in the complaint allege plaintiff engaged in protected activity by bringing a prior claim of discrimination, and that the defendant's employees knew of the claim and retaliated against him by not putting him on the applicant list due to his prior claim. These allegations, if true, support a claim for unlawful retaliation.

Defendant seeks summary judgment as to Count III. (Dkt. 11, at 11) It makes a multitude of factual arguments in support, including the claim that Dickman "cannot demonstrate that he was subjected to a materially adverse action or that a causal connection existed between earlier protected activity and a materially adverse action," that defendant had legitimate non-pretextual reasons for its decision, plaintiff cannot show defendant's reason was pretextual, defendant's employees were not aware of any disability plaintiff might claim, and plaintiff's application was treated no differently than other applicants. *Id*. at 20-24. Defendant's brief includes a detailed statement of facts from various evidentiary sources, including affidavits from the FAA human resource officers who decided

10

not to list plaintiff as a job applicant. The affidavits contain the officers' explanation for their decision. At the same time defendant filed this brief, it also moved to stay discovery, arguing plaintiff's claim was "on its face [] without basis," and a stay of discovery was warranted to "prevent a wasteful drain on the parties' resources." Doc. 13 at 2-3.[1] Plaintiff Dickman responded by arguing summary judgment was premature because he had not had any opportunity for discovery. (Dkt. 16). For its part, defendant denied there was any need for discovery and maintained the affidavits of the FAA employees showed they did not regard plaintiff as having a disability and were unaware he was claiming a disability when he applied for the job. Doc. 18 at 3.

This last assertion is emblematic of defendant's attempt to straddle between a motion to dismiss and a motion for summary judgment, relying alternatively on legal and evidentiary arguments. It is not a persuasive approach under the circumstances. At the same time defendant sought to keep plaintiff from gathering any evidence, it put forth its own evidence in the brief and argued there could be no genuine dispute about it.

When a nonmovant shows by affidavit it cannot present facts essential to its opposition to summary judgment, the court may defer the motion or deny it, allow time for discovery, or issue any other appropriate order. Fed.R.Civ.P. 56(d). Plaintiff has met his burden of showing the need for discovery, pointing out he has had no access to defendant's employees or employment documents and has had no chance to discover the circumstances surrounding defendant's decision to deny his job application. *See* Dkt. 16 at 5-6. Included in these circumstances are whether defendant has waived "commuting area" requirements for other job applicants. *Id*. at 6. Plaintiff may or may not ultimately prevail on the merits of his retaliation claim – the court expresses no opinion on that

---

[1] Magistrate Judge Rushfeld denied the motion to stay discovery. (Dkt. 21).

question here – but plaintiff has set forth a valid claim for relief in his complaint and is entitled to use the processes of the court to gather evidence in support of his claim.[2] Defendant's motion for summary judgment on the claim of retaliation will be denied without prejudice to reassertion at a later time.

IT IS ACCORDINGLY ORDERED this 26th day of September, 2012, defendant's Motion to Dismiss for Failure to State a Claim and/or for Summary Judgment (Dkt. 10) is DENIED. Plaintiff's Motion to Continue to Conduct Discovery Regarding Motion for Summary Judgment (Dkt. 15) is GRANTED IN PART as set forth above.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE

---

[2] Equally unpersuasive is defendant's argument that plaintiff's claim should be dismissed on the merits because plaintiff's counsel inadvertently failed to include the affidavit required by Fed.R.Civ.P. 56(d) in his initial brief. Counsel apparently realized the error and added an affidavit, although as defendant points out this was done three days late.  There is not a hint of bad faith or of prejudice in connection with this error, and it certainly does not warrant a summary dismissal on the merits of the claim.