IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

David J. Dickman,

    Plaintiff,

vs.                       Case No. 11-2523-JTM

Ray LaHood, Secretary of the
Department of Transportation,

    Defendant.

MEMORANDUM AND ORDER

In 2008, David Dickman applied for an advertised position with the Federal Aviation Administration at its Olathe, Kansas facility. The FAA had previously determined that Dickman, who lives in Willis, Kansas and would have to spend nearly four hours on the road each day, was ineligible for the position under its requirement that job applicants live within a reasonable distance. Dickman, who had previously instituted a variety of legal claims against the FAA, brought the present action against the Secretary of Transportation, arguing that the FAA discriminated against him on the basis of disability, and that it retaliated against him for his other employment actions.

Dickman has since abandoned the disability claim, and now advances only the retaliation claim. The defendant has moved for summary judgment, which the court grants for the reasons provided herein.

*Findings of Fact*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as

a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).[1]

---

[1] The court also takes note of plaintiff's additional Motion to Strike (Dkt. 72), which essentially seeks to advance rejoinders to the FAA's arguments in its Reply memorandum. (Dkt. 69). The court finds that the Reply does not present new arguments which have been injected into the case unfairly or for the first time. All arguments in that pleading are classic reply arguments, addressing legal issues previously raised the original motion, and the relief sought by plaintiff is accordingly denied. *See Sosna v. Bank of America,* Case No. 10–2374–JTM, 2011 WL 1060966, 6 (D. Kan. March 21, 2011) (discussing standard).

2

*Findings of Fact*

The FAA is responsible for the safe and efficient operation of air traffic in the United States and prides itself on being a world leader in its field. Its mission is to "provide the safest, most efficient aerospace system in the world," and the Agency "strive[s] to reach the next level of safety, efficiency, environmental responsibility and global leadership." The FAA employs some 44,000 people across the nation.

Dickman was formerly employed by the FAA, but voluntarily resigned on December 17, 2004, when the FAA denied his request for a hardship transfer. After his resignation, Dickman has applied, or thought he applied, for at least four jobs with the FAA—two positions in 2007 and two positions in July 2008. He was not selected for any of those positions by the FAA.

Including the present case, Dickman has commenced at least three EEOC administrative claims against the FAA. He failed in each of those claims at the administrative level. While Dickman has testified that this case is his second lawsuit against the FAA, it is actually his third. In *Dickman v. Peters*, Case No. 07-02562-JAR (*Dickman I*), Dickman alleged that he was subjected to disability discrimination by FAA human resources specialist DeAngela Hightower. Judge Robinson ultimately granted the FAA's motion for summary judgment, finding that the Dickman had failed to prove his claim that the FAA had denied his job application as a pretext for disability discrimination.

In 2007, Dickman applied for two FAA positions[2] at the Air Route Traffic Control Center (ARTCC) in Olathe, Kansas. The first (ACE-ATO-08-025-100041) was only open to current FAA employees. The second (ACE-ATO-08-047-100650) was open to applicants in the local community area.

It is uncontroverted that in 2007, Dickman lived in Willis, Kansas, and was not a current FAA employee. Willis, which is near Hiawatha, Kansas, is 69 miles from the

---

[2] The listings were for ACE-ATO-08-025-100041 and ACE-ATO-08-047-100650.

ARTCC "as the crow flies." There is, of course, no road running directly between Dickman's residence and the ARTCC.

The FAA states that, according to Mapquest, the shortest distance between Willis and the ARTCC is 90.81miles, a route takes 2 hours and 2 minutes to travel. Mapquest also indicates a slightly longer route of 95.32 miles, which could be traveled in 1 hour and 55 minutes.

In his response to the defendant's motion, Dickman states that he has been able to drive the distance in 1 hour and 35 minutes. He does not describe which route he took, and there is no indication that Dickman mentioned this feat to the FAA in the course of its eligibility assessment. In a prior affidavit, Dickman stated: "I lived over 100 miles from Olathe, though I told HR that I would move to my sister's home, which is 20 miles away."

It is uncontroverted that Danny Sadler, a Manager in the FAA's Employment Services Branch, decided that Dickman was ineligible for the first position because he was not a current FAA employee, and ineligible for the second, because he lived outside the commuting area.

After Sadler's determination, Dickman called FAA human resource specialist, Terri Craddock-Moore. According to Dickman, Craddock-Moore told him that the commuting area was "about 100 miles." There is no evidence that Craddock-Moore, a subordinate of Sadler, was authorized to set FAA policy. Craddock-Moore initially believed that Dickman lived outside the commuting area, and she had no knowledge of his 2007 job applications.

Sadler believed that Dickman lived about 120 miles away.

When he determined that Dickman lived outside of the commuting area, Dickman's last prior EEOC activity known to Sadler was two years old.

Dickman had contacted Sadler, Hightower's supervisor, to the decision. Sadler sent Dickman a letter on February 4, 2008, explaining that Dickman was not job eligible because he lived outside the commuting area.

On February 7, 2008, Dickman sent an email to Sadler asking for reconsideration by the FAA of his ineligibility. He wrote to propose a hypothetical change to a closer location:

> Note: I am requesting reconsideration for disqualification [sic] due to area of consideration as reason since I *would* reside at 16236 150th St. Bonner Spring [sic], KS 66012 which is my Brother Inlaw's [sic] and Sisters [sic] home and then reside on my days off at 148 Hudson ST., Willis KS 66434.

(Emphasis added).

In a letter dated February 25, 2008, Sadler denied Dickman's request. Sadler wrote:

> Based on the aforementioned review and consideration, it has been determined that the available evidence supports the initial determination of lack of eligibility, ... i.e., you are not within the commuting area of the position. The commuting area is defined as one or more population centers in which people live and can reasonably be expected to travel back and forth daily to their usual place of employment.

Dickman filed an EEOC complaint alleging disability discrimination and retaliation against the FAA, challenging its determination that he was not eligible for the two jobs described in the announcements. He contended that his requests for "reasonable accommodation" were denied by the FAA on the basis of disability discrimination and retaliation for his prior EEOC activity.

During the EEOC investigation, Sadler provided an affidavit supplying written answers to a series of questions. In pertinent part, Sadler's affidavit states:

> Q: Did Mr. Dickman's physical condition and/or his prior EEO activity have a bearing on the decisions to disqualify him for the positions he has applied for? If yes, explain.
>
> A: No.
>
> Q: Was Mr. Dickman's name placed on the Selection Certificates that were submitted to the Selecting official(s) for selection consideration?
>
> A: Mr. Dickman's name was not referred to the Selecting Official for selection consideration since he was determined ineligible.
>
> Q: lf his name was not referred for selection consideration, give the reason why not.
>
> A: I supervise the HR Specialists who administer the rules established in

5

the FAA Human Resource Policy Manual (HRPM) which are used in filling FAA positions. David Dickman's situation first came to my attention when l received a phone call from him after he'd been found ineligible. There are rules we must follow in processing employment applications such that applicants have to meet established eligibility and qualification requirements. These requirements are clearly identified in the respective vacancy announcement. Human Resource Specialists are accountable for upholding these rules. After hearing Mr. Dickman's concerns, I pulled the paperwork and found the HR Specialist had accurately processed his applications. In one instance, Mr. Dickman was found ineligible because he was not a current FAA employee, and that particular announcement was open only for consideration of current FAA employees. The other announcement was open only for consideration to applicants within the local commuting area. The HRPM defines the local commuting area as

> [o]ne or more population centers in which people live and can reasonably be expected to travel back and forth daily to their usual place of employment.

Mr. Dickman's application contained an address which was, as I recall, approximately 120 miles away. We always use the address on the employment application to determine whether an applicant is within the commuting area. Mr. Dickman's offer to use an alternative address of a relative was made well after the announcement had closed and, as I recall, after a selection had already been made. I instructed Mr. Dickman that if he wanted us to consider another address in processing his application he should put that address on his application paperwork and submit it in accordance with the instructions on how to apply, which are always clearly indicated on the vacancy announcement. As for Mr. Dickman's request for a reasonable accommodation; reasonable accommodation in the context of announcement pertains to provisions the Agency makes enabling a person to apply for consideration when they otherwise are unable to do so. Mr. Dickman was clearly able to submit an employment application for both these announcements. The eligibility and qualification requirements used in filling FAA positions are consistently followed for all applicants, including 30% or more compensably disabled veterans.

Q: To the best of your knowledge, was Mr. Dickman treated any differently than others that were in the same or a similar situation as she was?

A: Mr. Dickman's physical disabilities and prior EEO activity were not factors we considered when making decisions relevant to him. He was treated no differently than any other applicant in the same or a similar situation as his.

Sadler was also deposed:

Q. Okay. I'm going to read that. We always use the address on the employment application to determine whether an applicant is within the commuting area. Tell me about what you meant by that sentence?

A. Well, when you're -- when you're looking at a commuting area, I mean, you're talking about a distance, a reasonable distance that you can expect employees to travel to and from their -- their duty location. So if -- if you're – you know, you've got to have some kind of a -- of a point in which you're going to make the assessment as to whether or not a particular applicant is within the commuting area.

Q. Okay.

A. So that point is the address that's on the application.

Q. Okay. So if -- if there is an address on that application, that's the end of the story, that's what their -- that address is considered for their area of consideration?

A. Well, I would say in my experience in working staffing for 25 years, I would say 99.9 percent of the time that's true.

Q. Okay. Tell me about that other .1 percent?

A. I've experienced situations in which people annotate that it's not their address on the application that they submit.

Q. Can you give an example, please?

A. Yeah. Mr. Dickman's applications for positions at FAA had some kind of a statement on there which clearly indicated it wasn't his address. It was his sister's address or sister --no. I know what it was. It said -- it said for work purposes only.

Q. Now, does that -- now you said that happens very rarely where someone will do that?

A. That's my only time I've ever experienced that in the thousands of jobs that I've either filled directly or supervised. I was an OPM evaluator for a few years. So I went in and did investigations of case files for hundreds of positions, all kinds of different agencies. I've never seen that before.

Q. Okay. In these positions early in 2008 do you remember there being such an annotation?

A. I don't think it was on this wave of applications. I seem to remember it on-- the two applications I referenced -- I say two applications. There was only one. There were two jobs in -- in -- in contention there, but – but only one of which the office had an application for.

Dickman testified that Sadler told him that "[y]ou have to live—if you're going to use your sister's address on any application in the future, put it on the bid announcement and it would be accepted." Sadler told Dickman that FAA would consider the address on

7

his application for purposes of determining residency.

In an undated Final Agency Decision from the FAA, the FAA found that Dickman was not the victim of disability discrimination or retaliation in regard to either of the 2007 announcements. Dickman's claims concerning his ineligibility and non-selection for the two 2008 announcements are not the claims which he asserts in this case. He believes that the EEOC administrative case involving those job announcements is still pending.

In the summer of 2008, the FAA posted two Management and Program Analyst vacancy announcements on the same date. The first (ACE-AAT-080257-10419) was open to "U.S. Citizens Commuting Area" in the local commuting area and is referred to by the FAA as the "external list." The second (ACE-AAT-080257-10419) was open to "Current or Former Employees-Qualified Civil Service Employees within the Commuting Area," and is referred to by the FAA as the "internal list." Both announcements were essentially for the same position, pursuant to FAA rules giving veterans preference in selection for external announcements.

It is uncontroverted that the FAA's decision to only accept applications from persons within the local commuting area was made for several legitimate business reasons. It is also uncontroverted that the decision was in no way related to the prior EEOC activity of any potential applicant, including David Dickman.

Under FAA policy, an area of consideration is the recruitment area in which an agency makes a search for eligible candidates for positions that will be filled. That area may be organizational, geographical or both.

Under FAA policy, the selecting official is responsible for determining the area of consideration in consultation with the Human Resources Department. Paul Infanti was the selecting official for the 2008 announcements.

Based upon its prior experience, the FAA has determined that it is a waste of its time and resources to seek applicants for positions such as the position of Management and

Program Analyst from across the United States.

The five important elements underlying FAA policy are uncontroverted. First and foremost, contemporary FAA policy expressly permitted it to limit the geographic region from which it selects applicants. Dickman attempts to controvert this last point by noting the in December of 2010, the FAA changed the commuting area requirement to veterans. But this change would take effect only a year and a half after Dickman's application. Dickman explicitly concedes that this policy was not in effect at time the FAA considered his application for the 2008 announcements.

Second, by limiting the area of consideration to the local commuting area, the FAA typically receives a reasonable and appropriate number of qualified candidates from which to hire at the Kansas City ARTCC. A smaller area of consideration prevents the FAA and its employees from being over burdened by spending the time and resources necessary to review the large volume of applications from persons outside the local commuting area.

Third, limiting applications to persons in the commuting area enables the FAA to select persons who are currently established residents of the Kansas City area.

Fourth, the FAA generally does not have the funds to help pay for the moving costs of persons applying for administrative positions, such as the position of Management and Program Analyst. Consequently, willingness by applicants to move to the commuting area does not qualify as living in the local commuting region.

Fifth, within the last seven years there were several advertised administrative job announcements at ARTCC which were successfully filled using an area of consideration limited to the Kansas City commuting area.

Dickman acknowledges that there are legitimate business reasons justifying the geographic restrictions on employees, including the ability of an employee to return to work if the need arose. In light of these considerations, the FAA has determined that the willingness by applicants to move to the commuting area does not qualify as living in the

9

local commuting region.

In April of 2008, Dickman filed an administrative complaint over the February determination of commuter ineligibility, contending that it was disability discrimination and illegal retaliation.

Dickman submitted an application the external list announcement before the August 3, 2008, deadline. Dickman also thought—even through the time of his own deposition--that he had also submitted an application for the internal list announcement, but the FAA has no record of receiving that application. Dickman stated in his deposition that he would provide proof of the internal list application, but has failed to do so. At the time, he still lived in Willis, Kansas.

Before submitting his application, Dickman called Hightower by telephone to discuss the commuting area issue. He told her of the statement by Craddock-Moore that the commuting requirement was 100 miles, and that he had determined that he lived only 87 miles from the FAA facility.

According to Dickman, he told Hightower that Sadler had told him that he could simply list his future address on the application, and that the FAA would consider the Willis address as his home address. Dickman has also testified that Hightower told him that the FAA's "rule of thumb" for the commuting requirement was 50 miles.

In an affidavit, Hightower stated that she told Dickman that she understood the "rule of thumb" for commuting was actually 50 miles. She explained

> *Is there a "rule of thumb," such as a 50 mile radius, for determining whether a candidate resides within the local commuting area?*
>
> When determining whether an applicant resides within the local commuting area, we look at what is a reasonably expected distance and commuting time to travel back and forth, daily to place of employment.
>
> There is nothing in writing that gives an exact radius when determining a local commuting area.
>
> The conversation with Complainant on July 29, 2008. I mentioned to the

Complainant that the rule of thumb for the area of consideration usually covers a 50 mile radius.

In her subsequent deposition, testified that she did not recall discussing the 50 mile "rule of thumb" with Dickman, and clarified that the rule is subject to the ultimate requirement of reasonableness:

> It's just a reasonable distance that an applicant or an employee would travel to and from work each day.... I guess we just look at maybe where some of the local communities that employees travel. Of the applicants that apply we look at those – the distances that they travel. We may do a Google or Mapquest, and we'll just bring it from there. We'll look at the miles, we'll look at the time it takes, that type of thing.

In his response, Dickman gives great emphasis to Hightower's restatement of the FAA's Olathe commuting policy. The court finds this emphasis undue given what is, after all, *a rule of thumb*. Moreover, the cited affidavit itself explicitly recognizes this, in stating that "[t]here is nothing in writing [in the policy] that gives an exact radius." Sadler's testimony is consistent with that of Hightower: the FAA's commuting policy is determined by reasonableness, and "knowing just how far out the employees in a given facility live and – and commute to and from home to work."

Hightower addressed the issue of Dickman's request to use his sister's address in her affidavit, and her statement is essentially uncontroverted:

> The Complainant[']s request for reasonable accommodation, to use a family member's address, in order to meet the area of consideration criteria, is not a valid accommodation and does not apply. Only applicants who reside within the commuting area of the advertised position were considered eligible.
>
> The Complainant resides in Willis, KS. According to the Map Quest, he lives approximately 115.34 miles from duty location, which will take about 1 hr 55 min in travel time one way.
>
> I made the decision that he was ineligible due to being outside the area of consideration and his request for reasonable accommodation is not a valid.
>
> Requesting [r]easonable accommodation is used for employees with mental or physical disabilities, and I am not aware of any disability claimed by the Complainant.

Dickman knew that his application might be precluded by the FAA's commuting requirement; in his own words he called to "clarify" the issue. He told Hightower that Sadler had told him that the FAA would consider his listed rather than actual address as controlling, and so planned to use his sister's address on the application.

It is uncontroverted that Hightower does not think that a person could commute between Willis, Kansas and the ARTCC on a daily basis. While Dickman stresses that Hightower acknowledged in her deposition that she does not know if any other Olathe employee travels to and from the Willis, the fact remains that Dickman would have to commute for the better part of four hours each day, and there is nothing in the record to suggest that Hightower's assessment of this as contrary to FAA policy was unreasonable.

Both Hightower and Sadler agreed that the 50 mile "rule of thumb" yields to practical considerations such as access to major highways, anticipated travel time, and the fact that other current employees were commuting that same distance. Further, the commuting area for other FAA facilities in the United States is not the same as the commuting area for the Olathe ARTCC. The commuting area may be larger in less populated areas and smaller in more densely populated areas.

On July 29, 2008, Dickman emailed a request for a "reasonable accommodation" of his alleged disability in regard to the job announcements "as I would reside at 16236 150th St. Bonner Spring [sic], KS 66012 which is my Brother Inlaw's [sic] and Sisters [sic] home and then reside on my days off at my home 148 Hudson St., Willis KS 66434."

Sadler responded:

> I have received and reviewed your inquiry submitted by e-mail, dated July 29, 2008, regarding vacancy announcements ACE-AAT-08-257-10417 and ACE-AAT-260-10419. Thank you for your comments. Your attention is directed to the portion of the announcements entitled "Who My Be Considered". Per the contents set forth therein, the criteria established for consideration of applications for the positions in question are limited to those applicants who reside within the commuting area of the advertised position. Applicants who reside outside the commuting area are not eligible for consideration.

Because Dickman's residence in Willis is not a disability, the FAA denied Dickman's request for a reasonable accommodation. In discovery, Dickman clarified that, in reality, the "disability" accommodation he requested was not for himself, but instead for his father-in-law who lives near him in Willis.

During his deposition, Dickman admitted that he never told anyone at the FAA or anyone during the EEOC administrative process about the purported need to accommodate his father-in-law's alleged disability, until he responded to the FAA's written discovery requests in this litigation on December 31, 2012. Further, nothing about either Dickman or his father-in-law's alleged disabilities required either to live in Willis—they simply chose to live there. Dickman testified that had the FAA given him the job, he would have moved within the commuting area.

Dickman's job application for the external list announcement lists his address as

> David J. Dickman
> 16236 150th st
> "FOR WORK PURPOSES ONLY"
> Bonner Springs, KS 66012.

The emphasis, and quotation marks, are Dickman's.

The FAA would normally use the address from the face of an application to determine commuting eligibility. However, because Dickman had previously contacted the FAA and specifically alerted it to the fact that he lived in Willis—outside the commuting area—Dickman was determined by the FAA to be ineligible for the position and not placed on the referral list of eligible candidates.

The FAA's determination that Dickman was ineligible for the job was not made in retaliation for Dickman's prior EEOC activity, but because he lived outside the reasonable commuting area.

Dickman lived outside the local commuting area at the time that he thought he applied for the positions. It would have been inconsistent with FAA policy and unfair to other applicants to allow David Dickman to use the address of another person as his

13

residence.

Although Dickman's claims of unlawful retaliation are against the FAA, he primarily focuses his claims of retaliation against Angela Hightower, human resources specialist, and her supervisor Danny Sadler. Both Hightower and Sadler deny that the determination of ineligibility was in any way based upon Dickman's prior EEOC activity.

Based upon Veteran's preferences, Hightower only initially reviewed applicants with prior military experience from the external list; consequently Dickman was one only three applicants from that list even evaluated for eligibility for that position. While she deemed Dickman ineligible for the position of Management and Program Analyst based upon the distance between Dickman's residence and the ARTCC, she consulted with agency counsel, Mark Camacho before making a formal determination. Both Sadler and Camacho confirmed Hightower's conclusion that Dickman was ineligible under the commuting requirement.

It is uncontroverted that the FAA denied the position announced in ACE-AAT-08-257-10417 because he did not apply it – there was no connection to Dickman's prior EEOC activity. Lisa Willis, an applicant on the "internal list" was selected by the FAA for the position of Management and Program Analyst. She was the most qualified candidate of the eligible applicants reviewed by Paul Infanti, a decision having nothing to do with Dickman's prior EEOC claims.

In his Response, Dickman notes that the FAA placed one applicant on the referral list who lived 67.93 miles from the Olathe facility. In addition, an applicant who lived in St. Joseph, Missouri, and lived about 70 miles from the Olathe facility, was within the commuting area requirement. Sadler has testified, however, that his "initial gut reaction" was that this applicant probably lived too far from the job. More generally, on the subject of commuting, Sadler testified,

> I think you're going to try to assess whether or not – I mean, an easy way to determine whether it's a distance people can reasonably be expected to

14

> commute is to take a look and see if there's any people that live in that area and – and commute that distance. I mean, that's just [one] of the ways of trying to bring some objectivity into what is a very subjective determination.

Unlike Willis, Kansas, which connects to Olathe by two-lane highways, St. Joseph, Missouri is located on an interstate highway directly connecting to Olathe. According to standard computer calculations, the one-way drive from St. Joseph is slightly longer than one hour, or about half the nearly two-hour drive from Willis.

In his Response to the motion for summary judgment, Dickman stresses that Hightower was a central figure in *Dickman I*, and knew of his allegations of discrimination. He also claims that the was treated different from other applicants in how the FAA considered the listed address in his job application.

However, there is no evidence that Hightower was involved in deciding Dickman's commuting ineligibility in 2008. In the processing of the application, Hightower contacted her supervisor, who reviewed pleadings in *Dickman I*, but this simply confirmed Dickman's own prior representation, under oath, as to his residence outside the commuting area. More importantly, the decision as to commuter ineligibility was made independently by Sadler and Craddock-Moore. In addition, that decision was made in February of 2008, before Dickman commenced his latest round of administrative complaints against the FAA.

There is no evidence that any other applicant had ever red-flagged his or her own application with the label "FOR WORK PURPOSES ONLY." FAA policy is to reject applications based on a *promise* to move. Dickman previously told the FAA that his Willis address was either 100 miles away, or somewhere between 90 and 114 miles away "depending on which highway the traveler would take."

*Conclusions of Law*

The defendant contends that the court should grant summary judgment on Dickman's claim of unlawful retaliation in violation of his rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794(d). Such claims are analyzed under the familiar burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), under which the court determines, sequentially, whether plaintiff has shown a prima facie case of discrimination, whether the employer has demonstrated a legitimate, non-discriminatory rationale for its action, and whether plaintiff has shown reasons to believe that the rationale is actually pretext for underlying discrimination. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). The government contends that Dickman was never qualified for the advertised position because he lived outside the commuting area for the Olathe facility.

The court agrees. A prima facie case of retaliation arises upon proof that an employee engaged in protected activity, suffered adverse employment action, and a causal connection exists between those two events. *Proctor v. United Parcel Service*, 502 F.3d 1200, 1207-08 (10th Cir. 2007). Such an inference cannot arise when the plaintiff is not qualified for the employment position. *See Amro v. Boeing*, 232 F.3d 790, 796-97 (10th Cir. 2000). Alternatively, the FAA's commuting rule presents a legitimate, non-discriminatory business decision, reflecting an appropriate concern for employee productivity and cost management. *See Turner v. City of Akron*, 324 Fed. Appx. 453, 456 (6th Cir. 2009).

Nor do the facts present any basis for concluding that the FAA's commuting rule is a pretext for discrimination. Pretext may be inferred from direct evidence that the plaintiff was treated differently from similarly-situated employees, or through circumstantial evidence that the proffered rationale is unworthy of credence. *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1215 (2000)

16

In determining pretext, the court looks at "the facts as they appear to the person making the decision." *Zamora v. Elite Logistics*, 478 F.3d 1160, 1165-66 (10th Cir. 2007). The court's purpose is not to act as a "super personnel department that second guesses employers' business judgments." *Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1330 (10th Cir.1999) (internal quotations and citations omitted). "The relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir.2004) (quotation omitted). Rather, he court's inquiry is directed at whether the employer honestly believed in the proffered rationale for its action. *Bullington v. United Air Lines*, 186 F.3d 1301, 1318 (10th Cir. 1999). That business judgment is evaluated in the light of the time it was made, not through "hindsight-aided analysis." *See Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1266 (10th Cir. 2001).

Here, there is evidence supporting the FAA's business judgment determination that a reasonable distance commuting requirement serves its legitimate interests by balancing factors which include the size of the pool of job applicants, ensuring applicants have familiarity with the region and are genuinely interested in employment, and guaranteeing reasonable employee scheduling and attendance. At the time relevant to these allegations, the FAA employed a flexible and common sense commuting requirement which was geared to specific facilities. For Olathe, the FAA determined that a drive of nearly two hours, one way, under optimal conditions, was excessive.

Dickman initially sought a "reasonable accommodation" relieving him from the commuting area requirement, citing first his own disability, then that of his father-in-law. That is, Dickman sought accommodation by listing his sister's address in Bonner Springs, when actually from Willis, with the intention to move to Bonner Springs. The evidence shows that Dickman simply *chose* to live in Willis, Kansas; there is nothing in the putative disability of Dickman (or his father-in-law) which actually forced him to reside there.

There is no evidence of inconsistent application of the commuting area requirement. That requirement, and the determination the Dickman was ineligible for work at the Olathe facility, was adopted and implemented *before* the protected activity now cited by Dickman. Craddock-Moore and Sadler determined Dickman was ineligible in early 2008, prior to Dickman's EEOC grievance in on April 1, 2008. Both Craddock-Moore and Sadler deny any knowledge of recent employment complaints by Dickman prior to their determination that Dickman fell outside the reasonable commuting area.[3]

Rather than submitting to FAA policy as to the commuting area requirement, Dickman essentially red-flagged his own application, indicating that he would technically list the address of his sister in Bonner Springs, but continue to reside in Willis. Dickman communicated this intention to the FAA. All of the evidence before the court confirms the conclusion that Dickman continued to actually reside in Willis, Kansas at all relevant times. The FAA was entitled to enforce its own commuting policy based upon the actual, current residence of applicants for employment.

The court finds that Dickman has failed to identify any applicants, deemed eligible by the FAA, who lived at anything like a similar distance, either in terms of miles or hours on the road. Finally, the court finds that Dickman's attempts to manufacture supposed inconsistencies in the application the "rule of thumb" commuting requirement are insufficient to create a material issue of fact. Some minor degree of variation in explanations of a policy, voiced at different times by different managers, can be expected. They fail to demonstrate pretext because the evidence shows that the policy was intended to be flexibly applied in the light of reason and common sense. The evidence confirms that the policy was applied in a rational and neutral fashion to Dickman's application, and the

---

[3] Sadler did know of the original *Dickman I* claim, but by 2008 this claim was well well over a year old, and thus outside the level of temporal proximity which may give rise to an inference of retaliation. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004).

policy was not a pretext for retaliation.

Finally, even if Dickman had shown a prima facie case of retaliation, summary judgment is appropriate because the uncontroverted facts show that the applicant actually chosen for the Olathe Management and Program Analyst position, Lisa Willis, was more qualified for the job. The FAA accordingly argues that, even if it is persuaded that Dickman has shown pretext, the court should grant summary judgment at least as to any claims for economic damages, or for equitable relief in the form of reinstatement or front pay. The court agrees that the admissible, relevant, and uncontroverted evidence demonstrates that Willis was the more qualified candidate, but the ultimate resolution of the argument is unnecessary, as the court finds that Dickman's retaliation claim otherwise fails on the merits.

IT IS ACCORDINGLY ORDERED this 25th day of June, 2013, that the defendant's Motion for Summary Judgment (Dkt. 60) is hereby granted; plaintiff's Motion to Strike (Dkt. 72) is denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE